UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SANTANDER CONSUMER USA, INC., <br><br> Plaintiff, <br> v. <br><br> TOWN OF WEBSTER, and <br> BONNETTES AUTOMOTIVE INC. <br><br> Defendants. | (Electronically Filed) <br><br> Civil Case No.: <br><br> **COMPLAINT** |

Plaintiff, Santander Consumer USA, Inc. ("Santander"), as and for its Complaint against Defendants, Town of Webster ("Webster") and Bonnettes Automotive Inc. ("Bonnettes"), alleges as follows:

## NATURE OF ACTION

1. In American Honda Finance Corporation v. The City of Revere, 471 F. Supp.3d 399 (2020) (hereinafter referred to as "*American Honda*"), the Court held that Mass. Gen. Laws Ch. 255, § 39A is unconstitutional on its face and thus cannot be used to eliminate a lienholder's interest in a vehicle without the lienholder having been afforded the Due Process requisites of notice and the opportunity for a hearing.

2. Despite this clear direction, the unconstitutional use of Mass. Gen. Laws Ch. 255, § 39A continues—municipalities rely on the statute to turn over vehicles to towing companies who in turn apply to the Massachusetts Registry of Motor Vehicles ("RMV") for a title free from prior existing liens, all without Due Process being afforded to the lienholders.

3. Here, after seizing a vehicle on which Santander holds a lien, Webster afforded no due process to Santander, and instead summarily disposed of its interests in that vehicle by giving that vehicle to Bonnettes as payment for the services that Webster had contracted

Bonnettes to provide. Bonnettes accepted The Vehicle from Webster as compensation, asserted an *ex parte* lien for those services, and then Bonnettes may have applied to RMV for title in Bonnettes' name with Santander's lien removed.

4. At no time was Santander afforded constitutionally appropriate notice, a hearing, or just compensation for the taking of Santander's property rights in the Vehicle.

## JURISDICTION AND VENUE

5. This is a declaratory judgment/civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 for deprivation of Santander's rights secured by the Fourth, Fifth and the Fourteenth Amendments to the United States Constitution, and accordingly jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), as well as 28 U.S.C. § 1331.

6. The remaining causes of action are appropriate pursuant to 28 U.S.C. § 1367 for interrelated state law claims that arise from the occurrences giving rise to the Federal claims, which have a common nucleus of operative fact.

7. Venue lies in the Court pursuant to 28 U.S.C. § 1391), because the Defendants reside in this district, and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

8. Plaintiff Santander is a corporation incorporated in the State of Delaware, in the business of taking assignments of retail installment contracts and holding the associated lien interests in vehicles, including being the duly perfected lienholder in The Vehicle, which is the subject of this action, a 2019 Jeep Renegade, VIN #: ZACNJBBB7KPJ77801 ("The Vehicle").

9. Defendant Webster is a municipality organized and existing under the laws of the State of Massachusetts.

10. Upon information and belief, Defendant Bonnettes is a corporation incorporated in the State of Massachusetts which is engaged in the business of towing and storing motor vehicles.

## FACTS

**Santander's Interest in the Vehicle**

11. Santander holds a duly perfected security interest in the Vehicle.

12. Before any other facts relevant to this action, non-party Jessica Nguyen (the "Customer") entered into a retail installment contract to finance the purchase of the Vehicle on or about September 17, 2021, which contract was thereafter assigned to Santander by the same document. By virtue of that transaction, Santander obtained its perfected security interest in the Vehicle.

13. Santander held and continues to hold a first priority lien interest in the Vehicle, which has been duly recorded on the title to the Vehicle.

14. On June 24, 2022, the Customer defaulted on the payment obligations under the retail installment contract, thereafter entitling Santander to immediate possession of the Vehicle.

15. By virtue of Webster's seizure of the Vehicle, and by virtue of amounts Bonnettes claimed by way of possessory lien on the Vehicle, the Customer was also and further in non-monetary default of the terms of the retail installment contract, thereafter, also further entitling Santander to immediate possession of the Vehicle.

**Webster Seized the Vehicle, in which Santander Held a Protected Interest, and Gave it to Bonnettes for Disposal**

16. On or about December 5, 2022, Bonnettes actively and regularly towed and stored vehicles at the direction of Webster police officers acting in the regular course of their duties as law enforcement officers.

17. On or about December 5, 2022, Webster took custody of the Vehicle and instructed Bonnettes to tow it from the roadway and store it Webster's direction.

18. The basis for Webster's seizure of the Vehicle was traffic enforcement.

19. Santander had no involvement with, or knowledge of, the operation of the Vehicle at the time it was seized by Webster Police and/or Bonnettes.

20. Santander did not receive prior notice from either Webster or Bonnettes that the Vehicle has been seized.

21. Santander did not receive notice of a hearing promptly after the seizure of the Vehicle by Webster Police and/or Bonnettes.

22. Upon later learning that the Vehicle had been seized by Webster and/or Bonnettes, Santander demanded that the Vehicle be released to it, and Bonnettes refused.

23. Webster benefited from Bonnettes' detention and disposition of the Vehicle, in that Webster obtained Bonnettes' impound storage services, as well as Bonnettes' towing services to clear the roadway, with no payment (or reduced payment) of money from Webster to Bonnettes.

24. Bonnettes only possessed the Vehicle by virtue of its relationship with Webster and acted in concert with Webster to seize, detain and dispose of the Vehicle. Bonnettes had no other right to remove the Vehicle from the roadway and hold it against anyone. Bonnettes was, therefore, acted under color of law when it towed, stored and/or disposed of the Vehicle.

### Webster and Bonnettes' Regular Policies, Customs and/or Practices Which Were Applied to the Vehicle

25. Webster and Bonnettes' conduct in relation to Santander and the Vehicle on and after December 5, 2022, comported with both Webster's and Bonnettes' regular policies,

customs and/or practices for the handling of Vehicles towed and impounded for the same or similar traffic enforcement reasons.

26. Webster carries out its essential functions through its own police, who, among other things, seize vehicles for a variety of reasons ranging from alleged criminal infractions to parking violations.

27. Webster delegates a portion of the performance of its essential functions to Bonnettes. Specifically, Webster police utilize Bonnettes to tow away, store and dispose of vehicles seized by Webster police acting in the course of their duties as law enforcement officers. In essence, Bonnettes is Webster's vehicle impound provider for the area relevant to this action.

28. Pursuant to this relationship, Webster exercises governmental authority to seize vehicles in concert with Bonnettes.

29. Regardless of the reason for Webster's initial seizure of a given vehicle, Webster does not return those vehicles to a person with a preexisting property interest when the justification for Webster's seizure has passed. Instead, Webster places seized vehicles in the possession of its tow operators, including Bonnettes, for storage and ultimate disposal, permitting the assertion of an ex parte possessory lien to secure payment of charges relating to the towing, storage, and disposal.

30. Bonnettes (and the other tow operators) accept the seized vehicles from Webster —which vehicles Webster does not own—as either partial or total payment for the towing and storage services Bonnettes provides to Webster.

31. Rather than receiving monetary compensation from Webster for the services Webster has contracted Bonnettes to provide, Bonnettes instead impresses an *ex parte* possessory

lien for towing and storage fees, which it claims supersedes any other persons' rights in these vehicles.

32. After assessing an *ex parte* possessory lien on impounded vehicles, Bonnettes refuses to return possession of the Vehicles to any other person, even those with pre-existing property rights in the Vehicles, while claiming additional daily storages charges.

33. To effectuate eventual disposal of an impounded vehicle, the Webster insists persons with preexisting property interests satisfy Bonnettes' *ex parte* possessory lien, and further asserts that if this unilateral condition is not satisfied, Webster can take title to the impounded vehicles and eliminate all other persons interest in those vehicles.

34. Webster benefits from Bonnettes' assertion of an *ex parte* lien on, and eventual sale of, seized vehicles. Without Bonnettes' conduct, Webster would be forced to pay monetary consideration to Bonnettes for the services Bonnettes' provides Webster instead of compensating Bonnettes with possession and authority to assert a lien on the impounded vehicles.

35. Moreover, upon information and belief, Bonnettes pays a portion of the proceeds it obtains from others back to Webster as part of its agreement(s) with Webster.

36. It is Webster's and Bonnettes' regular policy and custom, in the course of the above-described conduct, to not obtain a warrant for any of the following actions (for which no valid exception to the warrant requirement exists):

    A. The initial seizure of the Vehicle;

    B. The turnover of possession of the Vehicle to Bonnettes;

    C. The decision by Webster and/or Bonnettes to continue to detain the Vehicles after the initial reason for the seizure has passed;

    D. The decision of Bonnettes to assert an *ex parte* possessory lien and the amount of that lien;

  E. Bonnettes acting to acquire ownership by terminating all property interests in the Vehicle;

  F. The eventual sale of the Vehicle; and

  G. The application for free and clear title from the RMV.

37. Even if the initial seizure of the Vehicles in question were made under a valid exception to the Fourth Amendment's warrant requirement, a (possibly) valid initial warrantless seizure does not justify any action Webster or Bonnettes decide to take thereafter, as referenced in ¶ 36 (B-G) *supra*. Rather, Webster and Bonnettes are required to obtain a warrant, or new justification for a warrantless seizure once the reasons for the (possibly valid) initial warrantless seizure have dissipated. Alternatively, the subsequent actions rendered the seizure unreasonable in its manner of execution, even if done with an initially valid exception to the warrant requirement.

38. It is also Webster's and Bonnettes' regular policy and custom, in the course of the above-described conduct, to **not** provide any form of constitutionally adequate notice, nor any hearing whatsoever, in relation to any of the following actions:

  A. The initial seizure of the Vehicle;

  B. The turnover of possession of the Vehicle to Bonnettes;

  C. The decision by Webster and/or Bonnettes to continue to detain the Vehicles after the initial reason for the seizure has passed;

  D. The decision of Bonnettes to assert an *ex parte* possessory lien and the amount of that lien;

  E. Bonnettes acting to acquire ownership by terminating all property interests in the Vehicle; and

  F. The eventual sale of the Vehicle; and

  G. The application for free and clear title from the RMV.

39. Any notification(s) transmitted by Webster and/or Bonnettes relating to the conduct referenced in ¶ 38 (A)-(G) does not satisfy the constitutional due process requirement of notice, because these communications are notifications of Webster's and/or Bonnettes' unilateral demands, not notice of an opportunity to be heard (which does not occur).

40. These actions, all taken in accordance with Webster's and Bonnettes' regular policies and customs for seizing and disposing of seized motor vehicles, violate the Fourth, Fifth and Fourteenth Amendment to the United States Constitution.

41. Webster and Bonnettes knew or should have known that their actions violated the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

## COUNT I
### Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983
### (Deprivation of Property by Unreasonable Seizure)

42. Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

43. Santander is the holder of a protected property interest in the Vehicle.

44. Defendants Webster and Bonnettes meaningfully interfered with Santander's protected interest in the Vehicle by towing it, detaining it, withholding possession from Santander and taking title of it free from Santander's lien.

45. By these actions, Defendants Webster and Bonnettes acted under color of law to seize the Vehicle within the meaning of the Fourth Amendment to the United States' Constitution.

46. Defendants Webster and Bonnettes' seizure of the Vehicle was unaccompanied by a warrant.

47. Defendants Webster and Bonnettes' seizure of the Vehicle was unaccompanied by any legitimate exception to the warrant requirement. Alternatively, to the extent the initial seizure was accompanied by any arguably legitimate exception to the warrant requirement, it was carried out in an unreasonable manner of execution insofar as the seizure exceeded the scope necessary to complete any legitimate task associated with the purported warrant exception for which the Vehicle was seized.

48. Defendants Webster and Bonnettes' seizure of the Vehicle was therefore unreasonable in violation of the Fourth Amendment to the United States' Constitution.

49. Defendants Webster and Bonnettes' unreasonable seizure of the Vehicle was accomplished in accordance with the Defendants Webster and Bonnettes' standard policy and/or custom for the handling and disposal of seized vehicles.

50. As a direct and proximate result of Webster's and Bonnettes' violation of Santander's Constitutional right to be free from unreasonable seizures, Santander has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

51. Santander is, therefore, entitle to relief under 42 U.S.C § 1983.

**WHEREFORE,** Santander prays for judgment against Defendants Webster and Bonnettes, jointly and severally, for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages (as to Bonnettes only), statutory damages, appropriate declaratory relief, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1983, and such other and further relief as the Court deems just and proper.

## COUNT II
**Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983**
**(Deprivation of Property Without Due Process of Law)**

52. Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

53. Santander is the holder of a protected property interest in the Vehicle.

54. Webster and/or Bonnettes' actions resulted in the deprivation of Santander's protected property interests in the Vehicle.

55. Neither Webster nor Bonnettes had any mechanism for, nor did either secure, review of any of either Defendants' actions in relation to the Vehicle before a judge or other neutral decisionmaker.

56. Neither Webster nor Bonnettes provided Santander for an opportunity to be heard in relation to any of either Defendants' actions in relation to the Vehicle in any venue at any time.

57. Because neither Webster nor Bonnettes provided any mechanism for, nor did either secure, review of any of either Defendants' actions in relation to the Vehicle by a judge or other neutral decisionmaker, neither provided Santander with constitutionally adequate notice of that non-existent hearing procedure.

58. The manner in which Santander became aware of Webster and Bonnettes' seizure of the Vehicle, as well as Bonnettes' continued possession of the Vehicle, did not constitute adequate notice for the purposes of due process.

59. Defendants Webster and Bonnettes' deprivation of Santander's rights in the Vehicle was therefore accomplished without due process of law in violation of the Fifth and Fourteenth Amendment to the United States Constitution

60. Defendants Webster and Bonnettes' deprivations of Santander's rights in the Vehicle were accomplished in accordance with the Webster and Bonnettes' standard policy and/or custom for the handling and disposal of seized vehicles.

61. As a direct and proximate result of Webster and Bonnettes' violation of Santander's Constitutional right to be free from deprivations without due process of law, Santander has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

62. Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

**WHEREFORE,** Santander prays for judgment against Defendants Webster and Bonnettes, jointly and severally, for immediate possession of the Vehicle, actual damages, consequential damages, punitive damages (as to Bonnettes only), statutory damages, appropriate declaratory relief, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

## COUNT III
### Violation of Civil Rights Pursuant to title 42 U.S.C. § 1983
### (Taking of Property Without Just Compensation)
### (as against Webster)

63. Santander realleges and incorporates herein by reference the allegations set forth in the prior paragraphs herein.

64. Santander is the holder of a protected property interest in the Vehicle.

65. Webster compensated Bonnettes, in whole or in part, by turning over possession of the Vehicle to Bonnettes, who lawfully possessed the Vehicle only by virtue of having obtained it from Webster.

66. Bonnettes accepted the Vehicle as compensation, in whole or in part, for the services it provided to Webster, namely the towing and storage of the Vehicle that Webster had seized.

67. Webster destroyed Santander's priority lien in the Vehicle, and its possessory rights pursuant to its contract with its Customer, by turning over the Vehicle to Bonnettes and permitting it to assert a possessory lien that both Defendants asserted took priority over Santander's lien and prevented Santander from exercising its contractual possessory rights in the Vehicle.

68. Webster thereby took Santander's interests in the Vehicle—its right to possession of the Vehicle and its lien priority in the Vehicle—for a public use.

69. Webster did not compensate Santander for the taking of its interests in the Vehicle.

70. Webster therefore took Santander's property for public use without just compensation in violation of the takings clause of the Fifth Amendment to the United States' Constitution.

71. Webster's taking of Santander's rights in the Vehicle was accomplished in accordance with Webster's standard policy and/or custom for the handling and disposal of seized vehicles.

72. As a direct and proximate result of Webster's violation of Santander's Constitutional right to be free from takings without just compensation, Santander has suffered damages based upon the lost value of the Vehicle, loss of use of the Vehicle, the lost revenue stream from its finance of the Vehicle, and other damages.

73. Santander is, therefore, entitled to relief under 42 U.S.C. § 1983.

**WHEREFORE,** Santander prays for judgment against Webster for immediate possession of the Vehicle, actual damages, consequential damages, statutory damages, appropriate declaratory relief, fees and costs of suit, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper.

## COUNT IV
### Conversion
### (as Against Bonnettes)

74. Santander incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

75. Santander has a lien in the Vehicle, and in accordance with its rights under its retail installment contract with the Customer, has become entitled to immediate possession of the Vehicle.

76. Bonnettes has refused, and continues to refuse, to surrender possession of the Vehicle to Santander.

77. By these actions, Bonnettes has purposefully, knowingly and/or intentionally exercised dominion and control over the Vehicle, wrongfully interfering with Santander's rights to possession of the Vehicle.

78. Santander has suffered, and continues to suffer, damages as a result of Bonnettes' actions.

**WHEREFORE,** Santander prays for judgment against Bonettes for actual damages, consequential damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## COUNT V
### Replevin
### (as Against Bonnettes)

79. Santander realleges and incorporates herein by reference to the allegations set forth in the prior points herein.

80. Santander owns the Vehicle and is entitled to possession pursuant to its lease with the Customer.

81. Santander has demanded that Bonnettes surrender the Vehicle to Santander's possession.

82. Bonnettes has refused, and continues to refuse, to surrender the Vehicle to Santander's possession.

83. Santander is entitled to an order requiring Bonnettes to immediately turn over possession of the Vehicle to Santander.

**WHEREFORE**, Santander prays for judgment against Defendant Bonnettes for immediate possession of the Vehicle, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## COUNT VI
### Tortious Interference
### (as Against Bonnettes only)

84. Santander incorporates herein by reference the allegations set forth in the above paragraphs, as if fully set forth herein.

85. Bonnettes wrongful actions as set forth above constitute a knowing and intentional tortious interference with Santander's contractual relations and/or prospective economic advantage with respect to the Vehicle.

86.     Santander has suffered, and continues to suffer, damages as a result of Bonnettes actions.

**WHEREFORE**, Santander prays for judgment against Bonnettes for actual damages, consequential damages, fees and costs of suit, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

Dated:     March 24, 2025                              KIELY & FERRANTE, LLC

                                                                    By: /s/ Kevin J. Kiely
                                                                    Kevin J. Kiely, Esq. (Bar No. 542043)
                                                                    85 Eastern Avenue
                                                                    Gloucester, MA 01930
                                                                    978.314.1699
                                                                    Kevin@oldharborlaw.com